TEQUILLA MARIE DAWSON,

        Plaintiff,

                                     Case No. 19-cv-378-pp

    v.

RES-CARE INC., GARY RUDZIANIS,
STEVEN REINHOLD, AMANDA KLEET,
KATIE DZIEDZIC and STACEY ELLIS,

        Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS (DKT. NO. 95) AND REQURING PLAINTIFF TO COMPLY WITH ALL DISCOVERY OBLIGATIONS WITHIN FOURTEEN DAYS OR FACE DISMISSAL UNDER RULE 37**

---

Defendant Res-Care, Inc. "is a company providing health and human services such as in-home caregiving." Dkt. No. 5 at 2 (citing www.rescare.com/about/). On October 16, 2017, the plaintiff—who is representing herself—filed two complaints in the Western District of Wisconsin. Dkt. Nos. 1, 1-1. One of the complaints was filed on a document titled "Complaint for a Civil Case;" the caption specified that it was being filed in the United States District Court for the Western District of Wisconsin "Milwaukee Division." Dkt. No. 1 at 1. In this document, the plaintiff alleged that Res-Care and the individual defendants committed violations of Title VII, the Equal Pay Act and the Fair Labor Standards Act. The plaintiff alleged that on August 21, 2015 she was wrongfully terminated from her case manager position; that on June 11, 2015

1

she reported concerns of harassment but that defendant Res-Care failed to take any actions co correct a hostile work environment; that defendant Stacey Ellis sabotaged her when she reported discriminatory acts; that Ellis "mad[e] unwelcome sexual advances, sexual comments, sexual suggestive jokes, and other verbal conduct of a sexual nature" that constituted sexual harassment; that certain defendants refused her paid time off, bonuses and overtime; and that she was discriminated against on the basis of sex when a man was paid at a higher rate. Dkt. No. 1 at 6-7. With regard to her allegation that the defendants had refused to pay her overtime, the plaintiff stated that "Worfor[c]e Development made contact with the defendant to requesting supporting evidence funds were paid;" she alleged that Res-Care refused to comply with the request and that "[t]he investigator Brian Buchanan awarded the plaintiff the maximum penalty for late payment of wages, including criminal sanctions where appropriate." Id. at 7. She sought back pay, front pay, injunctive relief, fees and costs, compensatory damages, punitive damages, restitution and interest. Id. at 7.

The second complaint was filed on a form titled "Complaint for Violation of Civil Rights;" again, the caption indicated that the complaint was being filed in the United States District Court for the Western District, "Milwaukee Division." Dkt. No. 1-1. This complaint asserted that the plaintiff was bringing claims under 42 U.S.C. §1983 against federal and state officials for acting under the color and authority of the United States to violate her Fourth, Fifth and Eighth Amendment rights and cause her humiliation, embarrassment and

2

mental suffering. Id. at 4-5. The plaintiff asserted that she "received medical treatment due to the emotional, physical, and mental stressors." Id. at 6.

Four and a half years later, the lawsuit has not moved beyond discovery. The defendants have asked the court to dismiss the case as a sanction for the plaintiff's failure to comply with the court's order to produce discovery. Dkt. No. 95.

I.    **Background**

The complaint filed in the Western District on October 16, 2017 did not say when the plaintiff started working for Res-Care or in what capacity. Dkt. No. 1. It did not identify the positions held by the individual defendants (although in a section titled "Supervisor intimidation," the plaintiff alleged that Stacey Ellis abused her authority, implying that Ellis was at some point the plaintiff's supervisor, id. at 6). The complaint did not describe the plaintiff's compensation structure; it did not describe her hourly pay or say whether she was entitled to overtime and at what rate. It did not explain what Mary Dixon did to harass or discriminate against the plaintiff, or on what basis. It did not explain what unwelcome advances or statements Ellis made to the plaintiff.

That said, just over four years ago, Judge James D. Peterson of the Western District construed the complaint broadly and gave the plaintiff permission to proceed against defendants Katie Dziedzic, Stacey Ellis, Amanda Kleet, Steven Reinhold, Res-Care Inc. and Gary Rudzianis. Dkt. No. 5. He interpreted the plaintiff's allegations as a claim that in August 2015, she was fired after she complained about job harassment and about Res-Care's failure

to pay her money she was owed. Id. at 2. Noting that only Res-Care was an appropriate defendant for Title VII claims, id. at 3, Judge Peterson allowed the plaintiff to proceed against Res-Care on a hostile work environment claim based on her assertions that she suffered harassment by Stacey Ellis and Mary Dixon. Id. at 3-4. He also construed her "quid pro quo" claim as a retaliation claim and allowed her to proceed against Res-Care on that claim. Id. at 4-5. Judge Peterson allowed the plaintiff to proceed against Res-Care on an Equal Pay Act claim, id. at 5, and allowed her to proceed on a Fair Labor Standards Act claim regarding the alleged failure to pay overtime against Katie Dziedzic, Steven Reinhold, Amanda Kleet, Stacey Ellis and Gary Rudzianis, as well as Res-Care. Id. at 5-6. Judge Peterson dismissed the remaining defendants, id. at 7, and denied the plaintiff's motion for appointment of counsel because he concluded that it was too early to tell whether the plaintiff's case was so complex that she could not litigate it herself, id. at 8. Judge Peterson stated that if, as the case progressed, the plaintiff believed she could not litigate it herself, she could renew her motion (assuming she could provide the names and addresses of attorneys who'd declined to represent her). Id. at 8.

On June 8, 2018, Res-Care—which had not yet answered the complaint—filed a motion to transfer venue to the Eastern District of Wisconsin. Dkt. No. 9. The plaintiff opposed the motion; in her opposition, she indicated that "[d]uring some point," she had won a state administrative action against Res-Care but still had not been paid. Dkt. No. 13 at 2-3. After Res-Care replied, Judge Peterson gave Res-Care the opportunity to supplement its

briefing to address concerns he identified, such as Res-Care's failure to identify witnesses in the Eastern District. Dkt. No. 32. He also gave the plaintiff the opportunity to file a sur-reply after Res-Care filed its supplemental brief. Id. at 3. Finally, he gave the plaintiff the opportunity to amend her complaint, giving her a deadline of March 4, 2019 by which to do so. Id. at 4.

The plaintiff did not file an amended complaint by March 4, 2019 (and never has amended her complaint). A week after that deadline, however, during the supplemental briefing period, the plaintiff filed another motion for the appointment of counsel. Dkt. No. 35. She stated that she was unable to proceed because of a lack of expertise and that she needed the assistance of a lawyer. Dkt. No. 35 at 1. She listed six lawyers or legal aid associations whom she had contacted. Id. at 1-2. She asserted that she did not have the funds to hire a lawyer. Id. at 2.

Two days later, on March 13, 2019, Judge Peterson granted Res-Care's motion to transfer the case to this district. Dkt. No. 36. The clerk's office assigned the case to this court on April 4, 2019. The court scheduled a Rule 16 scheduling conference for June 12, 2019 and ordered the parties to file a Rule 26(f) discovery plan by May 29, 2019. Dkt. No. 41. The parties filed a joint Rule 26(f) plan on May 29, 2019. Dkt. No. 42. Based on the dates proposed in the joint Rule 26(f) plan, the court canceled the Rule 16 scheduling conference and on May 30, 2019, issued a scheduling order setting a deadline of April 17, 2020 by which the parties must complete discovery. Dkt. No. 44.

On October 16, 2019, the plaintiff filed a third motion to appoint counsel. Dkt. No. 45. Among other things, the plaintiff said that she had been "having several difficulties in conducting the Discovery." Id. at 2. This motion listed six additional attorneys whom the plaintiff indicated she'd asked to represent her. Id. at 5-6.

On November 19, 2019—five and a half months into the discovery process—the plaintiff filed a letter. Dkt. No. 46. She told the court that she had been communicating by email and telephone with Res-Care's counsel, but that things had "reached a halt due to discrepancies with the Defendant request to sign authorizations forms to release all medical, tax return, employment and education records." Id. at 1. She indicated that Res-Care's attorney had told her that her responses to the defendant's discovery demands were insufficient. Id. The plaintiff said that on October 3, 2019, she'd been asked to supplement her discovery responses by October 10, 2019. Id. The plaintiff said that on that date—October 10, 2019—she'd asked for a conference to discuss the "discrepancies," but that she had not received a response until November 6, 2019; she stated that she had been under the impression that defense counsel would respond within twenty-one days of receiving her supplemental discovery responses. Id. The plaintiff explained that she'd received a second notice that her discovery responses were insufficient; she indicated that defense counsel had contacted her on November 11, 2019 and given her a date by which "to complete all incomplete responses (request to sign authorization forms)," indicating that the deadline for the responses was November 14, 2019. Id. The

6

plaintiff asserted that the "incomplete responses" were "the request to sign all authorization forms for all of my medical history, my entire history of education obtained, all tax returns, and all prior and present employment history." Id. The plaintiff indicated that she had objected to "all irrelevant requests and stated the reason and grounds for objecting." Id. She also stated that she'd expressed the view that there were laws that protected against "forced disclosure of such conversations between doctor and patient." Id. at 2.

The plaintiff stated that she had contacted defense counsel by email on November 12, 2019 to discuss scheduling a meeting; she said that the meeting was scheduled for November 19, 2019 at 11:00 a.m. Id. The plaintiff asserted that she had "submitted all documents for the defendant request to produce per attorney request," as well as serving her own request to admit, requests for production of documents and interrogatories. Id. The plaintiff stated that she had "discrepancies and or objections" that she felt needed to be discussed, including her objection to signing authorizations to release information (because she felt the information was not relevant to the case). Id. The plaintiff asserted that the defendant had refused to meet and confer and alleged that it was the defendant's fault that the plaintiff was having to involve the court. Id.

The plaintiff filed with the court a document titled "Complainant's Supplemented Response to Defendant's First Set of Requests to the Interrogatories." Dkt. No. 47. The document was filled with objections and qualifications. The plaintiff responded to one interrogatory this way:

> **Interrogatory No. 5:** Plaintiff identify each instance in which you believe you were denied overtime pay.

7

a) Please specify how much overtime you claim to be denied on each occasion

b) Please identify who at ResCare was responsible for each instance which deprived you from overtime; and

c) Please identify each person with Knowledge that supports your position that you were deprived overtime pay.

**Response No. 5:**

Plaintiff reiterates the above general objections and adds that the Plaintiff also objects to the above interrogatory on the grounds that question violates the Rules under the Federal Rules of Evidence and Rule 104(b). As well as, the interrogatory is premature since Plaintiff is still conducting discovery and that many of the facts are already know by Defendant's and ResCare, Inc. Plaintiff had made good faith effort to respond to each Interrogatory as set forth between the involving parties. Adds that the Plaintiff objection on grounds of Federal Rules of Civil Procedure of rule 33(d). As well as, the Plaintiff also objects that compilation is required. The interrogatory would necessitate the preparation of a compilation, abstract, audit or summary from documents in Plaintiff's and Defendant's possession. Plaintiff objects on another ground that the above Interrogatory is premature disclosure of experts. The interrogatory also seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210; 2034.220, and 2034.270. The Plaintiff objects to Interrogatory under rules of the Federal Rules of Civil Procedure: Rule 26.

Plaintiff can't possibly specify how much overtime was denied and each person with knowledge that support the Plaintiff complaint. Subject to and without waiving the foregoing objections, Plaintiff responds by summarizing the occasion(s) were overtime was denied. Please see the below incidents(s):

--Defendants and ResCare failed to pay the Plaintiff earned incentive bonuses;

--ResCare and Defendants failed to pay authorized overtime;

--ResCare failed to pay overtime completed remotely from home;

--ResCare failed to pay last two paychecks;

--ResCare didn't offer the Plaintiff benefits for 401k retirement plan;

--ResCare failed to payout balance of accrued PTO; and

--ResCare failed to adhere to the State of Wisconsin order to pay unpaid wages[.]

Id. at 6-7.

8

The plaintiff also filed with the court her supplemental responses to the defendant's requests to admit, dkt. no. 48, and a document titled "Plaintiffs Objections and Responses to Defendants First Set of Requests to Produce," dkt. no. 49. Like the supplemental responses to the interrogatories, these documents were replete with objections.

A couple of weeks later, the court received a letter from defense counsel. Dkt. No. 50. Counsel opined that in filing her November 2019 letter and discovery responses, the plaintiff was trying to preempt a defense motion to compel by explaining why she'd not fully complied with the defendant's discovery demands. Counsel asked that the court "allow the parties to continue their efforts to reach an accord as to the open discovery issues," assuring the court that Res-Care would "only involve the Court in its discovery dispute with Plaintiff as a last resort." Id. The court took no action.

On December 23, 2019, however, the court received another letter from the plaintiff. Dkt. No. 51. The plaintiff again recounted her exchanges with defense counsel, her requests to meet and confer, her allegations of "discrepancies," her objections to signing authorization forms. Id. at 1. She then asserted that Res-Care had failed to respond to her discovery demands within thirty days and had failed to ask her for an extension of time. Id. at 2. She stated that on November 18, 2019, she had contacted the defendant "to discuss the last letter sent on December 12, 2019," that the parties had discussed a tentative date to discuss discovery and that she had told defense counsel that because the defendants had not responded to her discovery

9

demands, "they have admitted to all the Plaintiff responses." Id. at 2. The plaintiff indicated that defense counsel had told her that Res-Care did not have "the time or he lack the knowledge of their schedule to have their portion completed by 12/20/2019." Id. The plaintiff did not ask the court for any relief.

Just over a week later, the court received another letter from defense counsel, along with a declaration. Dkt. Nos. 53, 54. Defense counsel characterized the plaintiff as attempting to manipulate the discovery process and playing a "gotcha" game. Dkt. No. 53 at 1. Counsel raised several issues: that the plaintiff had emailed her discovery demands to the defendants although they'd never consented in writing to being served by email (as required by Fed. R. Civ. P. 5(b)(2)(E)); that nonetheless, the defendants had tried to resolve the matter by calling and emailing the plaintiff, without success; that the plaintiff had rejected multiple requests to speak with her about discovery; and that her responses to defense discovery requests were "evasive and unresponsive." Id. at 1-3. Defense counsel asked the court to "dismiss any and all complaints" in the plaintiff's letters. Id. at 3. Defense counsel provided the court with a string of emails between the plaintiff and defense counsel. Dkt. No. 54-1.

When two months passed with no response from the court, the defendants filed a motion to compel and a supporting brief. Dkt. Nos. 55, 56. They also asked the court to extend the discovery deadlines, dkt. no. 58, a request the court granted, dkt. no. 59. Three weeks later, the plaintiff filed her own motion to compel and supporting brief, dkt. nos. 60, 61, as well as a

10

motion for a protective order, dkt. no. 62. She also filed a motion "to terminate and or limit examination." Dkt. No. 63. The defendants responded to all these motions. Dkt. Nos. 64-68. When more time passed without the court responding or acting, the defendants filed another request to extend the deadlines, dkt. no. 70, which the court granted, dkt. no. 71.

On October 14, 2020—approximately seven months after the parties had filed their motions to compel—the court issued an order denying the plaintiff's motions to appoint counsel, staying all deadlines and saying it would schedule a hearing on the pending discovery motions. Dkt. No. 72. Although the court found that the plaintiff had demonstrated that she couldn't find a lawyer on her own, the court concluded that the numerous documents the plaintiff had filed and the early stage of the case (still in discovery) demonstrated that the plaintiff could handle the litigation herself. Id. at 4-5. The court scheduled a hearing by videoconference for January 13, 2021. Dkt. No. 73.

By the time the court issued this order, the case had been before this court (the Eastern District of Wisconsin) for over a year and a half—since March 2019—and nothing of much substance had occurred other than discovery disputes. Even after the court issued its order saying that it would schedule a hearing, the plaintiff filed a letter complaining that the defendants continued to conduct discovery despite the court's order staying all deadlines. Dkt. No. 74. (The court subsequently issued an order clarifying that it had intended the parties to cease discovery until after the court resolved the outstanding discovery motions. Dkt. No. 75). The day before the scheduled

11

January 13, 2021 hearing, however, the court received another letter from the plaintiff. Dkt. No. 76. The letter stated that the plaintiff had "recently experienced back to back life altering experience in [her] life currently," and asked the court to reschedule the hearing "to mitigate the altering changes." Id. The letter did not explain what these experiences were or why they prevented the plaintiff from attending the January 13, 2021 video hearing.

The court canceled the hearing and referred all the pending discovery motions to Magistrate Judge William E. Duffin. Dkt. No. 77. Judge Duffin acted more swiftly than had this court. On January 14, 2021, in a thorough and detailed decision, Judge Duffin denied the plaintiff's motion to compel, denied her motion for protective order, denied her motion to terminate or limit examination and granted the defendant's motion to compel and awarded fees. Dkt. No. 78.

Judge Duffin first observed that it was not clear what relief the plaintiff was seeking in her motions. Id. at 3. He found the arguments in the plaintiff's brief undeveloped and lacking in specificity. Id. He denied her motion to compel because the plaintiff had not demonstrated that the defendants had failed to comply with any discovery obligation. Id. at 4. He perceived that some of the plaintiff's arguments were attempts to respond to the defendants' motions, and he explained:

> [The plaintiff's] response reflects the intuitive objections common to persons unfamiliar with litigation—the requests are overbroad and the information sought is private. But when a plaintiff files a lawsuit, she opens to scrutiny much of what society traditionally regards as private information. For example, when a plaintiff alleges that she required medical treatment because of the

12

defendant's actions (as [the plaintiff] does), the defendants are generally entitled to review her medical records to determine, for example, the nature of such treatment, the severity of the alleged injury, and whether a causal relationship exists between the treatment and the defendants' actions. When a person alleges injuries in the form of back pay, the defendants can inquire about what efforts the plaintiff undertook to mitigate her damages, which will include broad information about her pursuit of other employment. *See Brown v. Smith*, 827 F.3d 609, 616 (7th Cir. 2016) (discussing a plaintiff's duty to mitigate damages by pursuing new employment).

While courts regularly condemn discovery requests that are merely a proverbial fishing expedition, *Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 890 (7th Cir. 2018), appropriate discovery will commonly be much broader than what is ultimately admissible in court, Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.") Thus, the Federal Rules of Evidence have only limited application in restricting discovery. Certain evidentiary objections may be made to preserve them for trial, *see, e.g.*, Fed. R. Civ. P. 26(a)(3)(B), but making an objection generally does not relieve a party of the obligation to provide discoverable information. Nor is a "request to Meet and Confer," which was [the plaintiff's] response to many of the defendants' requests, an appropriate response.

The court has reviewed the defendants' discovery requests and finds them quite routine and ordinary given the nature and scope of [the plaintiff's] claims. The court has reviewed [the plaintiff's] answers and finds them insufficient.

Given that [the plaintiff's] noncompliance appears to be founded on a general misunderstanding as to her obligations and the permissible scope of discovery, the court will not discuss the deficiencies of each of [the plaintiff's] responses. Rather, the court will attempt to correct [the plaintiff's] misunderstanding by addressing Interrogatory Number 5 as an example.

In Interrogatory Number 5 [the plaintiff] was asked to provide information regarding her allegation that she was denied overtime pay. Her objections—that the question violates Federal Rule of Evidence 104(b), is premature, many of the facts are known to the defendants, her unspecified "objection on grounds of Federal Rules of Civil Procedure of Rule 33(d)" and "Rule 26," that it requires a "compilation," that it "is premature disclosure of experts and it "seeks premature disclosure of expert opinion" in violation of certain

provision of the California code of Civil Procedure (which has no relevan[ce] to these proceedings)—are baseless. And, in any event, such objections are not a basis for refusing to answer an interrogatory.

Beyond that, [the plaintiff's] response is insufficient. Much of her response does not address alleged overtime compensation but rather vaguely addresses other matters of compensation, such as alleged unpaid incentive bonuses, a claim that she did not receive her last two paychecks, and a claim that the defendants did not offer her a 401k.

The portion of her response that addresses overtime is unhelpful. First, she states baldly, "ResCare and Defendants failed to pay authorized overtime." This offers no more information than her complaint. Second, [the plaintiff] asserts that "ResCare failed to pay overtime completed remotely from home." (ECF No. 56 at 6.) This is slightly better in that it provides a hint that [the plaintiff] is alleging that she should have been paid for work she did from home. But it is nonetheless insufficiently specific in that it does not provide any details as to when she worked from home, how many hours she worked from home, or when she was alleged to have worked overtime—that is, more than 40 hours per week.

Responding to interrogatories is the point in the lawsuit at which a plaintiff must bring the broad allegations of a complaint into focus. A plaintiff's failure to provide specific information in response to an interrogatory can have serious consequences for a plaintiff's case. Not only may the court impose sanctions for not complying with discovery obligations, *see, e.g.,* Fed. R. Civ. P. 37(a)(3)(A), (b), (c), (d)(1)(A) and (3), but a plaintiff who fails to offer evidence to support her claims may well have her claims dismissed on summary judgment.

Sometimes a plaintiff may not have all the evidence necessary to prove her claim. For example, a plaintiff's overtime claim may be based on the fact that she was regularly required to address emails during non-business hours. But having left her employment with the defendant she may no longer have access to the emails necessary to be able to provide specific dates. In such circumstances, she must provide as much detail as she can. For example, the plaintiff may be able to identify a particular project that required after-hours work, the nature of her after-hours work, or a particular person with whom she regularly corresponded. She might not be able to give specific dates but may be able to narrow it to certain weeks or months. Then, when the plaintiff obtains the emails

14

from the defendant through her own discovery requests, she must supplement her response with the specific details.

Id. at 5-8.

Judge Duffin concluded by ordering that within thirty days of his January 14, 2021 order, the plaintiff must provide "full and complete (subject to her ongoing duty to supplement) responses to Interrogatory numbers 5, 13, 14, 15, 16, and 18 and Production of Documents numbers 10, 11, 12, and 15." Id. at 8. Judge Duffin explained that any motion for expenses under Rule 37(a)(5) must be filed within fourteen days. Id. at 9.

The plaintiff was aware of Judge Duffin's order, because on February 5, 2021, the clerk's office received from her a motion for an extension of time by which to comply with it. Dkt. No. 81. The plaintiff stated in her motion that in December 2021 she had experienced several deaths in her family, with the final burial taking place on January 15, 2021; she described these as "life changing" events. Id. at 1. She also stated that "during this alternating life change the Plaintiff has also had severe hand injuries" that resulted in back-to-back surgeries in January 2021; she described the surgeries and medical restrictions as "a hindrance" and asked for more time "to explain the reason for the requested hearing that was set forth on January 13, 2021 with Chief Judge Pamela Pepper, compile all necessary documents to comply with the Order and submit a response to the Order." Id.

Judge Duffin granted the motion the same day the plaintiff filed it, extending the deadline to March 17, 2021. Dkt. No. 82. Judge Duffin noted, however, that it was not clear why the plaintiff was requesting the extension;

he observed that there was no basis for the plaintiff to "respond" to his January 14, 2021 order. Id. at 2. He also made clear that the plaintiff had not asked him to extend the deadline by which the plaintiff needed to respond to the defendants' motion for attorneys' fees and that he was not doing so, observing that that deadline remained February 8, 2021. Id.

On March 1, 2021, despite the fact that Judge Duffin had denied her request for a protective order, the plaintiff filed a motion to amend protective order; the text of this motion indicates that the plaintiff was seeking a protective order because she believed that the defendants' requests for her medical records were overbroad, that the authorizations the defendants were asking her to sign were unlimited and the information the defendants sought might be confidential under state law. Dkt. No. 83. The same day, the plaintiff filed a letter addressed to Judge Duffin. Dkt. No. 84. She indicated that she wished to address "a few discovery disputes." Id. at 1. She indicated that she had asked for a hearing and referenced the hearing that had been scheduled for January 13, 2021. Id. She complained that the defendants had not complied with this court's October 14, 2021 text-only order staying deadlines. Id. She asserted that the defendants had not responded to her interrogatories within thirty days. Id. at 2. She complained that a deposition stated on September 25, 2020 and terminated early due to the defendants having a "court emergency" had never been completed. Id. She asserted that she had made numerous attempts to resolve discovery disputes and cooperate with the defendants, and she asked the court to deny the defendants' motion for an

16

award of attorneys' fees, arguing that it would be a "disservice" to her to have to pay the award. Id. She again indicated that the defendants were at fault for stalling the litigation. Id.

Two days later, on March 3, 2021, Judge Duffin awarded the defendants $9,226.50 in attorney fees and indicated that that amount would be due no less than fourteen days following the entry of judgment or dismissal of the case. Dkt. No. 85. In making this ruling, he referenced the documents the plaintiff had filed on March 1, 2021. Id. at 2. He concluded, however, that

> [The plaintiff's] motion is an improper attempt to relitigate a matter presented in conjunction with the past round of motions and which the court has already decided. Moreover, [the plaintiff] did not comply with Civil Local Rule 37. Therefore, the motion will be denied. The court denies the motion without awaiting the defendants' response to as to avoid the defendants needlessly incurring additional costs, for which [the plaintiff] would ultimately be responsible. *See* Fed. R. Civ. P. 37(a)(5)(B).

> [The plaintiff's] letter is also improper. Her complaints about the defendants' alleged noncompliance with discovery are not properly presented in a letter, do not comply with Civil Local Rule 37, and do not show an entitlement to relief. To the extent that her letter is a response to the defendants' motion for costs (ECF No. 79), it is untimely. As stated above, [the plaintiff's] response was due no later than February 8, 2021. (ECF No. 82 at 2 (citing Fed. R. Civ. P. 6(d); Civ. L.R. 7(h)(2) (E.D. Wis.).)

Id. at 2-3.

On May 3, 2021, this court issued a notice setting a telephonic status conference for June 23, 2021 at 1:30 p.m. and providing the parties with the call-in number and the access code. Dkt. No. 86. The plaintiff, however, did not appear at the conference. Dkt. No. 88. Defense counsel indicated that he still

had not obtained all the requested discovery from the plaintiff and had not been able to communicate with her for the past several weeks. Id.

On June 30, 2021, the court issued an order to show cause requiring the plaintiff to explain why she had not appeared and to indicate whether she intended to pursue the case; the court set a deadline of July 23, 2021 by which the plaintiff must provide that written explanation. Dkt. No. 89. On July 23, 2021, the court received from the plaintiff a written response indicating that she had had "several altercations that ha[d] led up to incidents preventing [her] from responding to the court Order and or the Defendant." Dkt. No. 90. These altercations included "someone breaking and entering" the plaintiff's home, someone stealing her identity, someone changing her mailing address and stopping her mail, someone locking her out of her email accounts, and someone stalking, harassing and threatening the plaintiff. Id. The plaintiff stated that despite these issues, she intended to proceed with the lawsuit. Id.

On October 5, 2021, the court held a show-cause hearing and discharged the order to show cause. Dkt. No. 94. During the hearing, the plaintiff explained that she was being stalked and harassed by someone with whom she had been in a relationship and that she had left her residence out of fear (she said that she was out of the residence between mid-May and mid-July or August). Id. at 2. Defense counsel told the court that the plaintiff still had not fully complied with Judge Duffin's order to turn over all discovery; he suggested that rather than the court trying to figure out what was missing, it allow him to file a motion explaining all the ways the plaintiff had not complied.

18

Id. at 3. The court agreed; it gave the defendants a deadline of October 29, 2021 by which to file the motion about the missing discovery (as well as to explain why they believed the extreme sanction of dismissal was justified), and gave the plaintiff a deadline of November 19, 2021 by which to respond. Id. at 3-4.

## II. The Defendants' Motion (Dkt. No. 95)

The defendants assert that the plaintiff has failed to comply with Judge Duffin's January 14, 2021 order. Dkt. No. 95.

They explain that they served their first set of discovery demands on the plaintiff on July 24, 2019. Dkt. No. 96 at 2. They indicate that they did not receive her initial responses until almost two months later—September 11, 2019—"after granting [the plaintiff] extensions based upon the pretense that she would immediately sign Res-Care's requested authorizations for release of information related to this case in exchange for the extensions." Id. The defendants assert that although the plaintiff provided written discovery responses, she did not provided the signed releases, and when they reviewed the written discovery responses, the defendants found them deficient and, in some cases, "blatantly non-responsive." Id. The defendants advised the plaintiff of the deficiencies and say they made "numerous attempts" to obtain the plaintiff's compliance, to no avail. Id. The defendants say this is what caused them to file their motion to compel. Id.

The defendants recount Judge Duffin's January 14, 2021 order and their own motion for fees. Id. at 2-3. They say that they also tried multiple times to

get the plaintiff to comply with Judge Duffin's January 14, 2021 order, again

without success. Id. at 3. The discussed the plaintiff's failure to appear for the

June 23, 2021 hearing, her response to the order to show cause and the

hearing on that order. Id.

The defendants then provide a history of their various contacts with the

plaintiff and their attempts to obtain discovery:

> --March 16, 2021: the plaintiff provided supplemental responses to interrogatories 5, 13, 14, 15, 16 and 18 and Requests to Produce 10, 11, 12 and 15.
> --March 19, 2021: the defendants advised the plaintiff by email that her response to interrogatory 5 was still deficient and explained what she needed to do to fully respond.
> --March 24, 2021: The plaintiff asked the defendants for an "enlarged copy" of the payroll documents so that she could respond to interrogatory 5.
> --March 26, 2021: The defendant provided the plaintiff with the enlarged copy of the payroll documents by both email and U.S. mail.
> --March 31, 2021: The defendants advised the plaintiff that her supplemental responses to interrogatories 13, 14, 15 and 16 were deficient because she did not provide the addresses of the companies and health care providers she'd identified.
> --April 8, 2021: The defendants sent the plaintiff a follow-up email asking her to tell them when she planned to fully respond to interrogatory 5.
> --April 28, 2021: The defendants sent a second email to the plaintiff reminding her of the information she needed to provide to respond to interrogatories 13, 14, 15 and 16.
> --May 19, 2021: The defendants again emailed the plaintiff, asking when she planned to respond to the discovery demands.
> --September 29, 2021: The plaintiff failed to appear for a "requested" telephone conference (it is not clear who requested it) and had not communicated with the defendants since her March 24, 2021 email asking for the enlarged copy of the payroll information.

Id. at 4-5.

The defendants explain that a full response to interrogatory 5 is

important because the plaintiff is alleging that Res-Care did not pay her

20

overtime and this is the interrogatory that asks her to identify the instances in which she wasn't paid overtime. Id. at 6. They say that in her supplemental response, the plaintiff said only that she was denied overtime "from the first 3-6 months of employment with average work week of 40-60 hours," and that she "[e]stimate[d]" that she had worked "500 hours over the course of working remotely for the first 3-6 months and the denied overtime pay that was already performed." Id. The defendants indicate that they sent the plaintiff an email, telling her what additional information they needed and reminding her that they'd sent her payroll records to her so that she could fully respond. Id. Despite this, the plaintiff has yet to provide the full information requested. Id. at 7. The defendants describe this as the plaintiff's "contumacious refusal to identify any particular day when she worked overtime and was not paid for that overtime." Id.

As for interrogatories 13, 14, 15 and 16, the defendants say that they still need the full name, last known address, telephone number and state of each company the plaintiff listed. Id. They note that they can't use the releases the plaintiff provided if they don't have that information. Id. at 7-8. Yet in her supplemental responses, the plaintiff listed companies, without providing any other identifying information for them. Id. at 8-10. Again, the defendants asked the plaintiff for more information but she has not provided it. Id. at 10-11.

The defendants argue that Judge Duffin made clear to the plaintiff what she needed to do and that her failure to do it could result in sanctions, including dismissal. Id. at 11. They argue that the plaintiff's claim that she

21

couldn't access her email or her mail after about mid-May of 2021 is irrelevant, because the defendants' communications with her asking her to comply were sent before May 2021. Id. at 12. They argue that their consistent efforts to gain the plaintiff's compliance and keep the litigation on track, as well as Judge Duffin's award of attorneys' fees against the plaintiff, have not sufficed to gain her compliance. Id. at 13.

As noted, the court gave the plaintiff a deadline of November 19, 2021 by which to oppose the defendants' motion. Dkt. No. 94. The plaintiff did not file anything by that date. Three days later, however, the plaintiff filed an "ex-parte" letter directed to Judge Pepper; at the top, the plaintiff had written "SEALED DOCUMENT." Dkt. No. 99. The letter began by saying that, "[p]er our last conversation back on October 2021," the plaintiff understands that the deadline for responding to the "Defendant and motion to dismiss the case is set to be determined." Id. The letter says that the plaintiff has had several "back to back sensitive incidents" and is ashamed to have to share them with the court or the defendant. Id. According to the plaintiff, it has been harder than she imagined and the beginning of "life altering experiences." Id. She says that she regrets that it has impacted the "most important deadlines." Id. The plaintiff writes:

> However, these are all things I have no control over and have yet great guilt, shame and embarrassment. I am trying to piece my life back together as best as I know how. I am seeking the resources needed and I have attempted to be as transparent as I can regarding my personal affairs that have caused turmoil in my daily functions and the ability to carry out my responsibilities. I have no desire to give up, nor any desire to have the case dismiss but life keeps punishing me; I guess.

I understand my emergency does not constitute an emergency on your end. I do not expect you to have empathy for my back-to-back circumstances. However, I have no other way of expressing my inability to function and give my best effort in representing myself. I am struggling tremendously. I hate that I have these commitments and going through all this at once. I am beyond overwhelmed, and I feel defeated. I don't not know what more can be done but I am asking for understanding and assistance in this case.

Please note, I have attempted to cooperate with the Defendant and all requests prior to these devastating circumstances and during this case. I cannot even produce the conversation I had with the Defendant as proof due to being locked out of my Gmail account which all correspondence was by email or phone. I can ensure I have attempted from day one to be in full compliance with this process and cooperate. Forgive me for my legal ignorance and or inability to comprehend the legal jargon at a capacity beyond my scope. If anything, else can be done beyond what has already been given I am requesting all arrangements or alternatives.

Id.

The plaintiff attached to the letter a "crime victim resources" document, a one-page form for "victims of sexual assault, human trafficking involving a commercial sex act, or child sexual abuse" signed by the plaintiff on November 11, 2021, a photocopy of a Milwaukee Police Department Community Contact card dated November 13, 2021, and the phone numbers one may use to commend an officer, file a complaint or contact a neighborhood police station. Dkt. No. 99-1. None of the attachments explain what happened to the plaintiff or why whatever happened affected her ability to respond to discovery requests in the year preceding what appears to have been the November 11, 2021 contact with officers.

The defendants filed a reply brief. Dkt. No. 100. They assert that whatever personal crises the plaintiff may have suffered in November of last

year do not excuse her "continued willful refusal to fully respond to defendants' legitimate discovery requests." Id. at 1. They argue that her "claim that she could demonstrate that she has 'attempted to cooperate with the defendant and all requests' if it were not for being locked out of her Gmail account is pure subterfuge." Id. at 2. The defendants say they have provided all relevant communications and discovery responses they have received from the plaintiff. Id.

The court held a hearing on June 29, 2022. Dkt. Nos. 104, 107. At the hearing, when the court gave the plaintiff the opportunity to explain why she had not yet complied with Judge Duffin's order and provide full discovery responses, the plaintiff asserted that she had. Multiple times she referenced the release forms that the defendants had asked her to sign, saying that she had provided those forms to the defendants. She did not explain what had happened in November 2021 or how whatever had happened related to the discovery. The court asked defense counsel for the date on which his office had received the signed release forms; defense counsel did not have that information at hand but stated that he could provided it shortly. The court reserved ruling until it could obtain that information.

On July 1, 2022, defense counsel filed a declaration in which he indicated that his office had received the plaintiff's executed releases on March 16, 2021 and that to his knowledge, no one from his office ever had told the plaintiff that her signing the releases would resolve all outstanding discovery issues. Dkt. No. 105. Counsel explained that three days after his office received

24

the signed releases from the plaintiff via email, the defense again advised the plaintiff that her response to interrogatory 5 was deficient; this is the email to which the plaintiff responded by asking for a set of her payroll records in a larger font so that she could more fully respond. Id. at 2. Counsel attached a copy of the email from the plaintiff with the signed releases; as indicated, it is dated March 16, 2021. Id. at 4-10. Counsel also filed a declaration from a paralegal at his office, who avers that she, of all the people at defense counsel's law firm, has had the most interaction with the plaintiff. Dkt. No. 106. She averred that she had not told the plaintiff that signing the releases would resolve all outstanding discovery issues or absolve her of the responsibility to provide a full response to interrogatory 5. Id.

## III. Analysis

### A. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) authorizes sanctions, including dismissal, against a party who fails to attend her own deposition, respond to discovery requests or comply with court orders and deadlines. Mojapelo v. Nat'l R.R. Passenger Corp., No. 16 C 6069, 2018 WL 10809373, at *1 (N.D. Ill. Feb. 22, 2018), aff'd, 748 F. App'x 68 (7th Cir. 2019). Under Rule 37(b), a court may dismiss a case if a party's conduct in ignoring the court's order constitutes willfulness, bad faith or fault. De Falco v. Oak Lawn Pub. Library, 25 F. App'x. 455, 457 (7th Cir. 2001); Williams v. Wahner, 714 F. App'x. 601, 604 (7th Cir. 2018). For example, the Seventh Circuit has said that dismissal may be

appropriate where a party gives no reasonable explanation for missing deadlines or responding to interrogatories. <u>Mojapelo</u>, 748 F. App'x. at 71.

B.     <u>Discussion</u>

The court begins by acknowledging that several times, the plaintiff has asked the court to appoint a lawyer to represent her, arguing that she does not have the training or knowledge necessary to represent herself. The court has declined each time. Some of the plaintiff's filings demonstrate a lack of knowledge about or understanding of the litigation process which is not her fault. If the court believed that the plaintiff's failures to comply with discovery demands and court orders were only the result of her lack of legal knowledge and training, it would not entertain or consider the defendants' motion asking the court to dismiss the case as a sanction. But a timeline of events leads the court to conclude that the plaintiff's conduct is more than a failure to understand the litigation process. That timeline convinces the court that the plaintiff willfully has refused to comply with the defendants' discovery demands and with Judge Duffin's order. The plaintiff has established a pattern of failing to comply with court orders, failing to timely file documents and focusing on her own concerns rather than responding to those of the court.

The pattern began in the summer of 2018 when the case still was in the Western District of Wisconsin. In his May 2018 order screening the complaint, Judge Peterson indicated that the plaintiff was free to amend her complaint to clarify some of the claims he had dismissed. Dkt. No. 5 at 7. In July 2018, the plaintiff filed a motion asking Judge Peterson to give her an extension of time

26

to amend her complaint. Dkt. No. 20. On January 30, 2019, Judge Peterson issued an order that, among other things, granted the plaintiff's request and gave her a deadline of March 4, 2019 by which to amend her complaint. Dkt. No. 32. But even though the plaintiff herself had asked Judge Peterson for an extension, the plaintiff did not file an amended complaint by March 4, 2019. She never has filed an amended complaint, despite having asked for and received time to do so.

Admittedly, a month and a half after Judge Peterson issued the order setting the March 4, 2019 deadline for the plaintiff to amend the complaint, the plaintiff filed her second motion for appointment of counsel. Dkt. No. 35. But the court received that motion on March 11, 2019—a week *after* the deadline Judge Peterson had set for amending the complaint. The motion did not mention amending the complaint; the plaintiff said only that she was unable to litigate the case because she was "incapable of proceeding with responding to Defendant response and court orders due to lack of attorney expertise/skills, resources, and need lawyer assistance in Plaintiff defense." Id. at 1. If the plaintiff believed that she needed a lawyer's help to amend the complaint, she could have filed her motion *before* the deadline for amending the complaint had passed—she had the entire month of February in which to do so.

Eight months later, the plaintiff filed her letter with the court, seeking to avoid the defendants filing a motion to compel. Dkt. No. 46. Among other things, the plaintiff told the court that discovery had stopped because of "discrepancies" with the defendants' request that she sign release authorization

27

forms for medical, tax, employment and education records. Id. at 1. She admitted that the defense had told her that her discovery responses were deficient, but appeared to be under the impression that the only thing "deficient" about her discovery responses was the fact that she had not signed the release authorizations; she stated, "Please note the incomplete responses at this time is the request to sign all authorization forms for all of my medical history, my entire history of education obtained, all tax returns, and all prior and present employment history." Id. She stated that she "strongly believed" that the information the defendants were asking her to agree to release was not relevant to the case. Id. at 2.

It was not true, however, that the only "deficiency" in the plaintiff's discovery responses was her failure to sign the releases. The email chain that the plaintiff herself attached to the letter showed that on August 21, 2019, she had asked defense counsel for more time to complete the discovery. Dkt. No. 46-1 at 4. She also asked for additional time on August 23, 2019. Id. at 6. The defense agreed to give the plaintiff more time to complete her discovery responses on the condition that she immediately sign and complete the release authorizations and send them back. Id. at 7. On August 27, 2019, the plaintiff responded that she would review the forms and decide whether to sign them. Id. at 8.

On October 2, 2019, the defendants wrote the plaintiff, explaining in detail the deficiencies in her discovery responses and asking for full responses by October 10, 2019. Id. at 11. On November 6, 2019, the defendants again

28

wrote to the plaintiff, indicating that although on October 21, 2019 she had provided supplemented responses, those responses also were deficient. Id. at 13. This letter provided detailed information about the information the defendants needed. The letter also stated that the plaintiff still had not signed the release authorization forms. Id. at 14. The letter asked the plaintiff to provide supplemented discovery responses by November 14, 2019 or the defense would be required to file a motion with the court. Id. at 14. On November 12, 2019, defense counsel also sent the plaintiff an email, advising the plaintiff that due to her outright refusal to sign the release authorizations (despite the defendants' willingness to extend discovery deadlines at the plaintiff's request), she was required to submit supplemented responses to the discovery by November 14, 2019; defense counsel indicated that if the plaintiff did not submit those supplemental responses, the defense would be forced to file a motion to compel with the court. Id. at 10.

So—by November 19, 2019, when the plaintiff filed her letter to the court, the defendants had told her more than once that not only had she not signed the release authorizations, but that her discovery responses were deficient. The defendants had told the plaintiff what information they needed and when they needed it. Rather than providing the information, the plaintiff wrote to the court.

The plaintiff included with her letter "Complainant's Supplemented Response to Defendant's First Set of Requests to the Interrogatories." Dkt. No. 47. As the court has noted, the document was filled with form objections that

29

had no legal validity; what it lacked was any information responsive to the defendants' discovery demands. Her responses to the defendants' requests for production were similarly lacking. Dkt. No. 49. Despite the plaintiff's efforts to avoid a defense motion to compel by writing to the court with her version of events, the defendants asked the court to allow the parties to continue to try to work out their differences. Dkt. No. 50. By the following month, however, the plaintiff had written to the court again, complaining about discrepancies and reiterating her objections to signing the release authorizations. Dkt. No. 51.

By the time the defendants filed their motion to compel on March 5, 2020, the parties were nine months into the discovery period and less than forty-five days from what was to be the close of discovery. The delay was solely the fault of this court—it should have intervened long before. It did not do so, first because defense counsel asked the court to give the parties time to try to resolve their differences themselves, and second due to its trial schedule. The court's delay gave rise to the defendants' March 5, 2020 motion to compel, followed by the plaintiff's March 26, 2020 motion to compel and other motions.

In her motion to compel, the plaintiff asked the court to grant her motion and order the defendants to produce documents, as well as to deem "admitted" "all other response." Dkt. No. 61 at 5. She did not request a hearing. Nor did she request a hearing in her motion for a protective order, dkt. no. 62, or in her motion to terminate or limit examination, dkt. no. 63. Nonetheless, the court issued an order indicating that it would schedule a hearing at which it would

address all the pending discovery motions. Dkt. No. 72 at 5. It scheduled that hearing for January 13, 2021—three months after the date it issued the order.

But the plaintiff waited until the day before the scheduled hearing—January 12, 2021—to ask the court to adjourn it. Dkt. No. 76. She did so in the first of several letters or motions asserting that she had suffered some mysterious, unidentified experience; she stated that she "recently experienced back to back life altering experience in [her] life currently," and asked the court to reschedule the hearing "to mitigate the altering changes." Id. These vague statements gave the court no insight into why the plaintiff could not appear at the January 13 hearing or when she could appear in the future. Rather than schedule another hearing and encounter the same problem, the court referred the pending discovery motions to Judge Duffin.

As the court explained above, Judge Duffin gave the plaintiff the benefit of the doubt. Rather than assuming that she was deliberately being difficult or deliberately refusing to provide discovery that she knew she was obligated to provide, Judge Duffin assumed that the plaintiff was acting out of a lack of knowledge and understanding of the legal system. He explained why a plaintiff who alleged that the defendants' actions had caused her to seek medical treatment had to sign an authorization for release of medical records, and why someone seeking back pay is required to sign an authorization for release of employment information and provide information about her efforts to find other employment. He provided a detailed explanation of the information that was missing from the plaintiff's supplement to her response to interrogatory 5,

31

explaining that it did not tell the defendants when she worked from home, how many hours she worked from home or the dates on which she allegedly worked overtime. He explained that sometimes plaintiffs do not have access to specific dates and explained how such a plaintiff could provide as much detail as she *did* have—perhaps identifying a project she'd worked on, or a general period during which she'd worked from home. Judge Duffin gave the plaintiff a tutorial in how to provide good-faith responses to discovery demands, as well as a clear, logical explanation for why complying with discovery demands is critical. He gave the plaintiff thirty days to provide full, complete discovery responses to the defendants.

So—by February 13, 2021 or so, the plaintiff should have provided the defendants with the signed release authorizations and the missing discovery information. Judge Duffin's order told her what she needed to do and why she needed to do it, and the order *required* the plaintiff to provide the defendants with full discovery. As the court has noted, the record shows that the plaintiff knew about this order because on February 5, 2021, the clerk's office received from her a motion for an extension of time by which to comply with it. Dkt. No. 81. This was the second letter from the plaintiff in which she made reference to having suffered life-changing events that prevented her from doing what a judge had ordered her to do. This time she was less vague—she described deaths in her family, an injury to her hand and surgeries. Oddly, however, she said that she needed additional time "to explain the reason for the requested hearing that was set forth on January 13, 2021 with Chief Judge Pamela

32

Pepper." Id. The plaintiff did not request the January 13, 2021 hearing with this court. The plaintiff also said that she needed more time to "submit a response to the Order." Id. Presumably the "order" she was referring to was Judge Duffin's January 14, 2021 order, but as Judge Duffin himself explained in his order granting the motion and giving the plaintiff more time, his order was not an invitation to respond or to argue. Judge Duffin's order was just that—an order, and the plaintiff's obligation was to comply with it.

The court already has commented on the fact that even though Judge Duffin denied her motion for a protective order, the plaintiff filed a motion to amend it; either she ignored Judge Duffin's ruling or, being generous, meant to ask Judge Duffin to reconsider his ruling. More problematic, she filed a letter with Judge Duffin falsely stating that this court had scheduled the January 13, 2019 hearing—the one the plaintiff had asked the court to adjourn for vague, unspecified reasons—at her request. Dkt. No. 84. She attempted to argue and litigate the very issues that Judge Duffin had explained to her in the January 14, 2019 order—the requirement that she sign the release authorizations, the requirement that she comply with the defendants' discovery demands in full. She also appears to have been trying to respond to the defendants' motion for attorneys' fees, although the deadline Judge Duffin had set for that motion had long since passed.

Next came the June 23, 2021 telephonic status conference before this court, which the plaintiff missed. The plaintiff did not contact the court to ask for a new hearing date or to explain why she had not appeared. Instead, the

33

court issued an order requiring her to provide an explanation. Dkt. No. 89. The plaintiff provided that explanation a month after the missed hearing. Dkt. No. 90. The explanation alleged a variety of unfortunate events, but did not provide the dates on which those events occurred or explain how long the problems had persisted. The court had no way to determine how these events might have prevented the plaintiff from appearing at the June 23, 2021 telephone hearing. To obtain that information, it scheduled the October 5, 2021 hearing. Dkt. No. 94.

At the October 5, 2021 hearing, the plaintiff told the court that as a result of having been stalked and harassed, she had been out of her residence between mid-May and mid-July or early August. Although the court had scheduled the June 23, 2021 hearing in a notice issued on May 3, 2021 and mailed to the plaintiff, the court gave the plaintiff the benefit of the doubt and concluded that even if she had received the notice, the facts that she had been out of her residence and that her mail and email had been tampered with explained her failure to appear at the June 23, 2021 hearing.

As it turns out, however, those events do not explain why the plaintiff did not comply with Judge Duffin's order to provide the defendants with complete discovery responses. Judge Duffin gave the plaintiff a deadline of March 17, 2021 by which to provide the full responses to the plaintiffs. The defendants concede that on March 16, 2021—the day before the deadline—the plaintiff *did* provide the defendants with supplemental responses. Dkt. No. 96 at 4. But these responses also were deficient. The March 16, 2021 supplemental

34

response to interrogatory 5 is missing the information that Judge Duffin told the plaintiff she must provide. The March 16, 2021 supplemental response says:

> **Interrogatory No. 5.** Plaintiff identify each instance in which you believe you were denied overtime pay.
> Please specify how much overtime you claim to be denied on each occasion.
>
> Supplemental Response No. 5.
> 5a) I was denied overtime pay from the first 3-6 months of employment with average work week of 40-60 hours. Estimated 500 hours over the course of working overtime remotely for the first 3-6 months and the denied overtime pay that was already performed. Excluding any calculation of interest accrued over the course of unpaid wages.

Dkt. No. 97-1 at 2. It does not identify when the plaintiff allegedly worked remotely—it does not give dates, or date ranges. Her answers to the other interrogatories did not provide addresses or other identifying information for prospective employers, actual employers for whom the plaintiff worked before or after leaving Res-Care or medical practitioners who have treated her. Id. at 2-6.

Rather than going to Judge Duffin and complaining that the plaintiff had not complied with his order, the defendants advised the plaintiff in a March 19, 2021 email that the responses still were deficient and advised her what she needed to do to fully comply. Dkt. No. 98-1 at 1. The email explained that the plaintiff needed to identify each instance in which she believed she was denied overtime pay and the specific amount of overtime to which she believed she was entitled; it told her that she should go through her time records to collect that information and reminded the plaintiff that the defendants had provided

35

her with those records. Id. This prompted the plaintiff to respond in a March
24, 2021 email that the font of the payroll information she'd received was too
small; she stated that if the defendants could provide her with font that was
large enough, she could "review the payroll documentation and attempt to
identify those dates." Dkt. No. 98-2 at 1. The defendants did just that—on
March 26, 2021, they provided the plaintiff with enlarged copies of the payroll
records (both by email and by U.S. Mail) and extended the deadline for her to
supplement the discovery responses to April 2, 2021. Dkt. No. 98-3 at 1.

As of March 26, 2021, the plaintiff had the information she needed to
fully respond to interrogatory 5, and she had it in usable form. As for
interrogatories 13, 14, 15, and 16, the addresses and identifying information
for her former employers, medical providers and companies where she applied
for work is in her possession—she did not need anything from the defendants
to provide that information. Yet the plaintiff has provided nothing further to the
defendants and did not communicate with them after her March 24, 2021
email asking for enlarged copies of the payroll information.

Against this backdrop, the plaintiff's statements at the June 29, 2022
hearing that she had complied with Judge Duffin's order by signing and
returning the release authorizations is not persuasive. First, Judge Duffin's
order made clear that the plaintiff needed to do more than sign the release
authorizations—she needed to provide additional, detailed information in
response to the defendants' discovery demands. Second, the defendants aver
that they received the signed release authorizations from the plaintiff on March

36

16, 2021—three days before the defendants advised her that her supplemental response to interrogatory 5 still was deficient and eight days before the plaintiff wrote back to the defendants telling them the font was too small on the payroll information. The post-March 16, 2021 email exchange demonstrates that the plaintiff was aware that even after she provided the signed release authorizations, there was more discovery she needed to provide the defendants. Yet she has not done so.

The defendants are correct that the issues the plaintiff says she suffered because of being stalked and harassed (having to leave her home from mid-May to late July or early August 2021 and having her mail and email interfered with) do not justify her failure to comply with Judge Duffin's order. Judge Duffin issued the order on January 14, 2021—four months before the plaintiff says she was forced to move out of her house. Judge Duffin gave the plaintiff additional time to comply with the order, extending the deadline to March 17, 2021. Rather than complying, however, the plaintiff filed documents continuing to argue the issues Judge Duffin already had resolved. By mid-May, Judge Duffin's deadline for the plaintiff to comply had passed, the plaintiff had provided supplemental responses that did not comply with his instructions and the defendants had advised the plaintiff that her supplemental responses were deficient and had given her enlarged copies of her payroll records.

Most recently, the plaintiff filed to file a formal response to the defendants' motion to dismiss. The defendants filed their motion on October 29, 2021; under Civil L.R. 7(b), the plaintiff's opposition to the motion was due

37

twenty-one days later—by November 19, 2021. Three days after that deadline, the court received from the plaintiff the *ex parte* letter addressed to the court in which she had had "back-to-back sensitive incidents." Dkt. No. 99. The plaintiff appears to have intended this document to be for the court's eyes only, because she put the words "SEALED DOCUMENT" at the top of the first page. Id. at 1. But as the court observed at the June 29, 2022 hearing, the document does not explain or describe the "back-to-back sensitive incidents." It does not tell the court what happened to the plaintiff or why what happened prevented her from communicating with the defendants since March 24, 2021. At the June 29, 2022 hearing, the court gave the plaintiff the opportunity to explain to the court why it should not grant the defendants' motion to dismiss the case for failure to comply with the defendants' discovery demands. The plaintiff still did not explain the "sensitive incidents" to which she referred in the *ex parte* letter. Instead, she insisted that she had complied with the defendants' discovery demands by signing and returning the release authorizations. As the court has explained—and as the evidence indicates that the plaintiff knew—returning the signed authorizations did not resolve the issue of the outstanding discovery.

The court understands that civil litigation is not easy for a non-lawyer. But the plaintiff has filed document after document filled with legal references and citations. She has not been shy about asking the defendants for more time or the court for relief. The court also understands that life events happen— people get sick, get evicted, get injured. But the plaintiff never has provided the court with details of the various "incidents" she has claimed to suffer, even

when the document notifying the court of one of those incidents was restricted to viewing by the court only. The plaintiff has asked for extensions of time to do things that she never has done. She has consistently missed deadlines and filed things after the deadlines to do so had passed. She has received a detailed order from Judge Duffin, with which she attempted to argue after it had been issued, and with which she still has not complied. She has received from the defendants descriptions of the information they need from her and how she can collect it. She has asked to adjourn a hearing with virtually no explanation (and had that request granted), missed a hearing and forced the court to require her to show cause why she did so, and provided the court and the defendants with vague and mysterious explanations for why she cannot do what everyone who files a federal lawsuit must figure out a way to do—provide the discovery requested by the defendants.

The court has considered lesser sanctions that may be available. Rule 37(b)(2)(A) provides various sanctions for failure to obey a discovery order. Rule 37(b)(2)(A)(i) says that the court may direct that the prevailing party's facts be taken as established. The court cannot do that here—the entire problem is that the defendants have not been able to determine what the facts are because the plaintiff has not provided sufficient information. Rule 37(b)(2)(A)(ii) allows the court to prohibit the plaintiff from supporting or opposing designated claims or defenses, or from introducing certain matters into evidence. In this case, doing that would require dismissal of the case, because the plaintiff has not provided full discovery regarding the overtime or the alleged employment discrimination

39

damages. The same is true for the sanction of striking the pleadings in whole or in part, as provided by Rule 37(b)(2)(A)(iii); if the court strikes the pleadings for which the plaintiff has failed to provide full discovery, it strikes the complaints. Staying the proceedings until the order is obeyed, as provided for by Rule 37(b)(2)(A)(iv), makes little sense—it has been eighteen months since Judge Duffin issued his order, and sixteen months since the defendants gave the plaintiff the enlarged copy of her payroll records, and still she has not complied. Rendering default judgment against the plaintiff—Rule 37(b)(2)(A)(vi) is the equivalent of dismissal. And treating the plaintiff's failure to obey the order as contempt, as provided by Rule 37(b)(2)(A)(vii), appears unlikely to yield any result, given that the plaintiff has indicated that she does not have the money to pay the award of fees granted by Judge Duffin.

The defendants are entitled to the information that the plaintiff believes supports her claims—both on the merits and with respect to damages. Because the plaintiff is not a lawyer and because she may have had some difficult life experiences (despite her failure to explain them to this court), the court will give the plaintiff one, final opportunity to comply with the defendants' discovery demands. The court will give the plaintiff fourteen days to fully comply with Judge Duffin's order. The plaintiff must answer interrogatory 5 by providing the actual dates on which she worked overtime, whether remotely or in person. The court expects the plaintiff to answer interrogatory 5 with specifics, such as: "My workday was supposed to be from 8:30 a.m. to 4:30 p.m. On the following dates, I worked the following hours of overtime: January 10, 2016—forty

minutes of overtime from 4:30 p.m. to 5:10 p.m. (remotely); January 27, 2016—thirty minutes of overtime from 4:30 p.m. to 5:00 p.m. (in person)," etc. As for interrogatories 13, 14, 15, 16 and 18, the plaintiff must provide the address and phone number for each entity she identifies. For interrogatory 13, she cannot simply say that she applied to work for Rock County or Nelson's Bus Service—she must provide the address and telephone number for Rock County and the address and telephone number for Nelson's Bus Service. For interrogatories 14 and 15, she must provide the addresses and telephone numbers for each of the companies listed (and, in the case of companies like Pick-n-Save and Rocky Rococo's, she must identify the location of the particular store or restaurant where she worked). For interrogatory 16, she must provide the address and contact information of the medical facilities she lists and identify any doctors, nurses, physicians' assistants or nurse practitioners who provided treatment.

    If the plaintiff does not serve this detailed information on the defendants in time for them to **_receive_** it by the deadline the court sets below, the defendants may renew their motion and the court will grant it and dismiss this case as a sanction for the plaintiff's failure to comply with Judge Duffin's order and the discovery rules. That means that the plaintiff will lose her opportunity to litigate her claims. The court will not grant any extensions of this deadline. This order is not an invitation to the plaintiff to respond to the court or to present argument. The plaintiff has two options—(1) provide the defendants

with the detailed discovery information Judge Duffin and this court have ordered her to provide or (2) have the case dismissed.

## IV. Conclusion

The court **DENIES WITHOUT PREJUDICE** the defendants' motion to dismiss. Dkt. No. 95. The plaintiff must provide complete responses to the outstanding discovery requests—as described by Judge Duffin, the defendants and this order—in time for the defendants to *receive* the responses by the end of the day on **July 20, 2022**. If the defendants do not receive full and complete responses to their discovery demands by the end of the day on July 20, 2022, they may renew their motion by filing a one-paragraph renewal accompanied by an affidavit attesting that counsel did not receive the responses.

Dated in Milwaukee, Wisconsin this 6th day of July, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

Case 2:19-cv-00378-PP   Filed 07/06/22   Page 42 of 42   Document 108