UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TEQUILLA MARIE DAWSON,

               Plaintiff,

                                          Case No. 19-cv-378-pp

   v.

RES-CARE, INC., GARY RUDZIANIS,
STEVEN REINHOLD, AMANDA KLEET,
KATIE DZIEDZIC and STACY ELLIS,

               Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS (DKT. NO. 109), DISMISSING PLAINTIFF'S FLSA CLAIM AND REQUIRING DEFENDANTS TO FILE STATUS REPORT**

---

The defendants have spent the last three years trying to obtain the plaintiff's response to interrogatory no. 5 regarding her claim for unpaid overtime hours. Magistrate Judge William Duffin granted the defendants' motion to compel on January 14, 2021 and awarded the defendants $9,226.50 in attorney's fees. The plaintiff's failure to respond has been the subject of status conferences, an order to show cause, a motion to dismiss and now a renewed motion to dismiss. The court will grant in part the defendants' renewed motion to dismiss and dismiss the plaintiff's FLSA claim.

I.    **Procedural History**

The plaintiff filed this case in the Western District of Wisconsin five years ago. Dkt. No. 1. Three years ago, Chief Judge James Peterson granted the defendants' motion to transfer the case to this district. Dkt. No. 32. Dkt. No.

1

36. On May 30, 2019, this court ordered the parties to complete discovery by April 17, 2020. Dkt. No. 43.

Soon after the court set the deadlines, the plaintiff began writing to the court regarding discovery issues. Dkt. No. 46-49, 51. The letters continued until the defendant filed a motion to compel. Dkt. No. 55. The plaintiff responded with her own motion to compel, a motion for protective order and a motion to terminate or limit examination. Dkt. Nos. 60-63. The court scheduled a hearing by videoconference on January 13, 2021, dkt. no. 73, but the day before the hearing, the plaintiff wrote to the court asking to reschedule, dkt. no. 76. At that point, the court canceled the hearing and referred all pending discovery motions to Judge Duffin. Dkt. No. 77.

Judge Duffin denied the plaintiff's motions, granted the defendants' motion to compel and awarded fees. Dkt. No. 78. Although Judge Duffin gave the plaintiff additional time to comply, the plaintiff filed another motion for protective order and a letter regarding the defendants' alleged failures to comply with discovery. Dkt. Nos. 82-84. On March 3, 2021, Judge Duffin granted the defendants' Rule 7(h) expedited, non-dispositive motion for an award of $9,226.50 in attorney's fees under Rule 37(a)(5). Dkt. No. 79, 85.

Nevertheless, the plaintiff repeatedly failed to comply with court orders and serve complete responses to the discovery requests. She failed to appear for a June 23, 2021 telephonic status conference with Judge Pepper, at which time defense counsel confirmed that he still had not received all discovery. Dkt. No. 88. The court issued an order to show cause, and on July 23, 2021, the

2

plaintiff wrote that she had "several altercations that ha[d] led up to incidents preventing [her] from responding to the court Order and or the Defendant." Dkt. No. 90. The court held a show cause hearing on October 5, 2021. Dkt. No. 94. Defense counsel asked for additional time to file a motion outlining all the ways the plaintiff had failed to comply with Judge Duffin's order. Dkt. No. 94.

The defendants filed a motion to dismiss on October 29, 2021, citing Rule 37(b)(2)(A) and the plaintiff's failure to comply with Judge Duffin's January 14, 2021 order. Dkt. No. 95. The defendants pointed out that the plaintiff was "inarguably aware by the clear language of Magistrate Duffin's Order that a failure to comply with the Order could result in the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37 up to and including dismissal of this matter." Dkt. No. 96 at 11 (citing Dkt. No. 78). The plaintiff filed a one-page restricted document, along with four pages of exhibits. Dkt. No. 99. The court conducted a hearing on June 29 2022, but reserved ruling on the defendants' motion while the defendants provided additional information. Dkt. No. 105.

On July 6, 2022, the court entered a written order outlining the plaintiff's failures to comply; the court agreed with the defendants that the plaintiff's excuses did not justify her failure to comply with Judge Duffin's order. Dkt. No. 108. Even the plaintiff's restricted document failed to explain or describe the "back to back sensitive incidents" that the plaintiff claimed had prevented her from responding to the defendants. Id. The court wrote:

> The plaintiff has asked for extensions of time to do things that she never has done. She has consistently missed deadlines and filed

3

things after the deadlines to do so had passed. She has received a detailed order from Judge Duffin, with which she attempted to argue after it had been issued, and with which she still has not complied. She has received from the defendants descriptions of the information they need from her and how she can collect it. She has asked to adjourn a hearing with virtually no explanation (and had that request granted), missed a hearing and forced the court to require her to show cause why she did so, and provided the court and the defendants with vague and mysterious explanations for why she cannot do what everyone who files a federal lawsuit must figure out a way to do—provide the discovery requested by the defendants.

Dkt. No. 108 at 39.

The court denied without prejudice the defendants' motion to dismiss but agreed that the defendants were entitled to the requested information. The court explained to the plaintiff exactly what she needed to provide to the defendants and warned her that if the defendants did not receive the discovery responses by the end of the day on July 20, 2020, the defendants could renew their motion to dismiss and the court would dismiss the case as a sanction for the plaintiff's failure to comply with Judge Duffin's order and the discovery rules. Dkt. No. 108. The court warned that it would not grant additional extensions: the plaintiff must provide the defendants with detailed discovery information as ordered by Judge Duffin and this court or the court would dismiss the case. Id. at 42. The plaintiff did not respond to the court's order.

## II.    Defendants' Renewed Motion to Dismiss (Dkt. No. 109)

On July 22, 2022, the defendants filed a one-page renewed motion to dismiss based on the plaintiff's failure to comply. Dkt. No. 109. The defendants' prior motion and brief had included the requisite Rule 37 certification. Dkt. No. 96.  In addition, Attorney Emery Harlan filed an affidavit in support of the

4

motion, averring that the plaintiff had not "provided any supplemental discovery responses whatsoever as mandated by the Court's July 6, 2022 Order." Dkt. No. 110.

Three days after the defendants filed their motion to dismiss, the plaintiff filed a motion for extension of time and her own motion asking the court to dismiss the defendants' motion to dismiss. Dkt. No. 111. In its order granting the extension, the court expressed concerns regarding the plaintiff's explanations but acknowledged that it had mailed—but not emailed—a copy of the order to the plaintiff:

> As the court recounted in its July 6, 2022 order, the plaintiff filed this lawsuit in October 2017—four years and nine months ago. Her failure to comply with discovery demands started not long after, before she ever reported having problems with her mail. In fact, it was not until July 23, 2021—after significant back-and-forth between the plaintiff and defense counsel, after Judge Duffin had entered an order requiring the plaintiff to provide the missing discovery and requiring her to pay attorneys' fees, after this court had issued an order requiring the plaintiff to show cause why she had not appeared at a telephone hearing and three years and nine months into the case—that the plaintiff wrote to the court, alleging that someone had broken into her home, stolen her identity, changed her mailing address, stopped her mail and locked her out of her email accounts. Dkt. No. 90.
>
> In the year since, the defendants have filed a motion to dismiss. Dkt. No. 95. The [plaintiff] appears to have received that motion, because on November 22, 2021, she filed a letter telling the court that she was aware of the deadline for responding but that "sensitive incidents" had occurred in her life. Dkt. No. 99. As the court explained in its July 6, 2022 order, the issues with the plaintiff's mail do not appear to explain why she did not comply with Judge Duffin's order. The plaintiff has known about the problems with her mail for at least a year. Despite the fact that she says that she wishes to proceed with this lawsuit, she has not taken any steps to ensure that she receives important mail—she does not appear to have leased a post office box, for example, or had her mail directed to a mail collection location such as a UPS store. The plaintiff appears to

5

expect the court and the defense to make extraordinary arrangements but has not made such arrangements herself.

It also is not clear why the plaintiff needs to gather or collect the discovery. She has known since the June 29, 2022 hearing what the defendants were seeking. She could have provided the discovery before now and avoided the renewed motion to dismiss. She did not do so.

Because the court did not follow its own advice and send the July 6, 2022 order to the plaintiff by both mail and email, the court is going to give the plaintiff ***one, final*** opportunity to turn over the discovery the defendants have requested—the discovery that Judge Duffin ordered her to turn over eighteen months ago. This one time, the court will send a copy of the July 6, 2022 order that the plaintiff asserts she did not receive, as well as this order, to the plaintiff by email and by certified mail. To be clear—if the plaintiff turns over the discovery and this court denies the defendants' renewed motion to dismiss, the court will not send future orders, notices or other documents by email or certified mail. It is the plaintiff's responsibility to make sure she can receive the important documents that the court and defense counsel send her. If this case survives dismissal, it will be up to the plaintiff to get a post office box or come up with some other way to ensure that she receives her mail. Nor will the court call or email the plaintiff every time it issues a document, so that she can come down to the courthouse to retrieve it in person. The court sends orders to pro se parties by mail. It will not change its practices, and create additional work for its staff, for a single plaintiff.

If the plaintiff does not turn over the discovery to the defendants in time for defense counsel to receive it by the deadline the court sets below, or if she turns over incomplete discovery, the court will grant the defendants' renewed motion to dismiss. The court will not extend the deadline. This is the plaintiff's final opportunity to do what Judge Duffin ordered her to do a year and a half ago, and to avoid dismissal of her case.

Dkt. No. 112 at 5-6. The court ordered the plaintiff to serve all outstanding discovery on the defendants by the end of the day on August 12, 2022. Id.

On August 5, 2022, the defendants copied the court on a letter sent to the plaintiff providing her with copies of her discovery responses (as she had

Case 2:19-cv-00378-PP   Filed 03/07/23   Page 6 of 26   Document 119

requested). Dkt. No. 113. On August 11 and 12, 2022 the plaintiff filed "supplemental response's," dkt. no. 114, and "interrogatories and supplemental responses," dkt. no. 115. On August 17, 2022, defense counsel filed a letter with the court explaining that the plaintiff had not cured "the identified deficiency in her amended supplemental responses." Dkt. No. 116. Defense counsel explained that the court had ordered the plaintiff to be specific as to the exact time increments that she was claiming she worked and was denied overtime pay. Dkt. No. 116 at 1. Defense counsel said that "instead of providing truthful and accurate time periods that she worked and was purportedly denied overtime pay," the plaintiff simply "added another column to her chart on pages 1 to 3 with additional non-sensical time periods of purported in-person overtime hours that come nowhere near mathematically calculating to the claimed unpaid hours for those days." Id. at 2. He asked the court to grant the defendants' renewed motion to dismiss without further proceedings. Id. at 2.

On August 22, 2022, the court received a letter from the plaintiff Dkt. No. 117. The plaintiff acknowledged that at 8:40 p.m. on August 11, 2022, she had received an email from defense counsel, advising her that counsel found her response to interrogatory no. 5 to be insufficient. Id. at 1. The plaintiff claimed in the August 22, 2022 letter that on August 12, 2022 (the next day), she had resubmitted amended supplemental responses by email, and "attempted to follow-up on the amended response to ensure all compliance at 3:51 p.m." Id. The plaintiff said that as she was waiting for a response, she

7

realized that she had not signed the amended supplemental responses, so she resubmitted a signed copy at 5:46 p.m. Id. The plaintiff said that on August 17, 2022, defense counsel "reported to the Court's" that she had not complied with the court's July 26, 2022 order "[i]n which, [she] lacked specific exact time increments that [she] claimed [she] worked overtime and was denied overtime pay." Id. The plaintiff says that defense counsel asserted that she had not signed her amended responses, failing to acknowledge that she later had provided signed responses. Id. The plaintiff maintained that her signed, amended discovery response had the "specific details" regarding the time increments of her claimed unpaid overtime, and gave examples. Id. at 2. She asserted that the timesheet provided to her by defendant ResCare was inaccurate and alleged that "manipulations of amount of time worked was altered." Id. The plaintiff asked the court to review a May 28, 2015 email and exhibits. Id. She asked the court to review all the exhibits "provided on August 11, 2022, and thereafter in support of [her] claims herein the amended discovery responses." Id. She asked the court to give her the opportunity to cure any deficiencies and to tell her "how to correct it due to several attempts to cure all deficiencies, after [she] received the July 26, 2022 Court Order." Id.

The plaintiff ended her letter with the following paragraph:

In conclusion, I have submitted several documents that support my claim of unpaid wages, PTO and denied overtime pay, etc. . . I may have a few technical issues throughout the amended responses. However, I made great efforts to identify and cure all deficient responses. I also attempted to seek aid during the process by requesting confirmation before the deadline with little to no response. It is blatantly shown through the exhibits and previously received documentation that I was wrongfully terminated, that

8

funds were withheld for over two years after termination, and that I was denied overtime pay as well was denied pay for hours reported and worked. ResCare has reported time after time I wasn't denied overtime pay, I was paid all worked wages and funds were disbursed appropriately. However, provided documents suggest otherwise. I would like to inform the Courts I attempted to cure all deficient responses to the best of my ability and comply fully and accurately with the Court Order issued July 26, 2022.

Id. at 2.

The plaintiff attached forty-six pages of exhibits to this letter. Dkt. No. 117-1.

A.    Responses to Interrogatory No. 5

That leaves the court with the defendants' renewed motion to dismiss—with no brief in opposition from the plaintiff—and the plaintiff's "supplemental responses," "interrogatories and supplemental responses" and exhibits for review. Dkt. Nos. 114, 115 and 117-1. The crux of the dispute appears to be the plaintiff's various responses to interrogatory no. 5 (Judge Duffin's order addressed interrogatory numbers 5, 13, 14, 15, 16, 18 and requests for production of documents 10, 11, 12 and 15). In interrogatory no. 5, the defendants asked for the following information:

Interrogatory No. 5: Please identify each instance in which you believe you were denied overtime pay.

a) Please specify how much overtime you claim to be denied on each occasion.

b) Please identify who at ResCare was responsible for each instance which deprived you from overtime pay; and

c) Please identify each and every person with knowledge that supports your position that you were deprived overtime pay.

Dkt. No. 114 at 1.

9

The defendants first notified the plaintiff that her responses to this interrogatory were deficient on October 2, 2019. Dkt. No. 57 at ¶4. On November 14, 2019, the plaintiff a supplemental response in which she said that she couldn't "possibly specify how much overtime was denied and each person with knowledge that support the Plaintiff [sic] complaint." Dkt. No. 57-4 at 7.

Almost three years later (on August 11, 2022), the plaintiff purported to be able to recall the hours she worked on particular dates. The following excerpt is taken from the supplemental response received by the clerk's office at 12:19 on August 11, 2022:

> 1a) My workday didn't consist of one set work schedule. I had a flex schedule which allowed me to move working hours around. If the hours worked totals 40 hours per week at minimum. The chart below indicates each instance where overtime occurred but was denied.

| Date | In | Out | Unpaid Hours | Location |
|------|------|------|------|------|
| 7/21/14 | 8:00 A.M. | 4:07 P.M. | .50 hours | In-person |
| 7/25/14 | 8:02 A.M. | 3:49 P.M. | .75 hours | In-person |
| 8/01/14 | 8:10 A.M. | 3:31 P.M. | .25 hours | In-person |
| 8/08/14 | 8:03 A.M. | 4:04 P.M. | .50 hours | In-person |
| 8/13/14 | 8:19 A.M. | 4:32 P.M. | .25 hours | In-person |
| 8/18/14 | 8:08 A.M. | 4:34 P.M. | .25 hours | In-person |
| 8/20/14 | 8:11 A.M. | 4:31 P.M. | .25 hours | In-person |

10

| 8/22/14 | 8:13 A.M. | 3:30 P.M. | 1.25 hours | In-person |
|---------|-----------|-----------|------------|-----------|
| 8/27/14 | 8:13 A.M. | 4:35 P.M. | .25 hours  | In-person |
| 8/28/14 | 8:00 A.M. | 3:34 P.M. | 1.0 hours  | In-person |
| 10/3/14 | 7:58 A.M. | 6:10 P.M. | 1.25 hours | In-person |
| 10/7/14 | 8:00 A.M. | 5:30 P.M. | 9.0 hours  | In-person |
| 10/8/14 | 8:00 A.M. | 5:30 P.M. | 9.0 hours  | In-person |
| . . .   |           |           |            |           |

Dkt. No. 114 at 2.

As the defendants point out, this answer is difficult to comprehend. The plaintiff does not explain what she means by "In" and "Out"; does "In" refer to the time she began working (or showed up for work) and "Out" refer to the time she stopped working (or left work)? If so, the amounts reflected in the "Unpaid Hours" column do not match the time reflected in the "In" and "Out" columns. For example, on July 21, 2014, the chart shows that the plaintiff was "In" at 8:00 a.m. and "Out" at 4:07 p.m., which means that she worked eight hours and seven minutes. But the "Unpaid Hours" column indicates that she worked .50 unpaid hours, not seven minutes. Id. The chart indicates that on June 25, 2014, the plaintiff was "In" at 8:02 a.m. and "Out" at 3:49 p.m.—she worked a total of seven hours and forty-seven minutes, yet the "Unpaid Hours" column indicates that she worked .75 unpaid hours. Id. Because the plaintiff did not work an eight-hour shift on July 25, 2014, it is not clear how she determined that she worked .75 hours of overtime. The above chart includes an additional

11

two pages of similar entries. Id. at 3-4. At the bottom of the table the plaintiff

stated, "*08/21/15 I was wrongfully terminated and requesting to be

compensated for the entire 8 hour shift I would have worked if I were not

terminated." Id. at 5. She then included four additional charts:

| Pay Date | Pay Period End<br>*** Withheld paychecks from ResCare |
|----------|----------------------------------------------------------|
| 08/28/2015 | 08/21/2015 |
| 06/5/2015 | 05/29/2015 |
| 07/31/15 | 07/24/2015 |

- Please note I inquired about unpaid funds on several occasions for example: Early week of October 2015 and November 17, 2015. I contacted Human Resources and several other upper managements of ResCare. I was advised I had no wages to be disbursed. Please note that on 10/26/2017 ResCare Inc and Subsidiaries contact Wisconsin Department of Revenue to report $1,087.67 of claimed funds. The categories listed were Wages, Payroll, and Salary.

Id.

| Week | Payroll | Pay Date | Period End | Unpaid Holiday Pay |
|------|---------|----------|------------|--------------------|
| 37 | 1 | 09/12/14 | 09/5/14 | $76.96 |
| 49 | 2 | 12/05/14 | 11/28/14 | $76.96 |
| 29 | 1 | 07/18/14 | 7/11/14 | $76.96 |
| 1 | 1 | 01/2/15 | 12/26/14 | $76.96 |
| 3 | 1 | 01/16/15 | 01/09/15 | $76.96 |
| 5 | 1 | 01/30/15 | 01/23/15 | $76.96 |
| 23 | 1 | 06/05/15 | 05/29/15 | $76.96 |
| 29 | 1 | 07/17/15 | 07/10/15 | $76.96 |

Id. at 6.

| Date | In | Out | Unpaid Hours | Location |
|------|-----|-----|--------------|----------|
| 07/07/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/08/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/09/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |

| | | | | |
|---|---|---|---|---|
| 07/10/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 7/12/14 | 10:00 a.m. | 2:00 p.m. | 4.0 hours | Remotely |
| 07/13/14 | 9:00 p.m. | 12:00 a.m. | 3.0 hours | Remotely |
| 07/14/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/15/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/16/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/17/14 | 7:00 p.m. | 9:00 p.m. | 2.0 hours | Remotely |
| 07/19/14 | 10:00 a.m. | 2:00 p.m. | 4.0 hours | Remotely |
| 07/20/14 | 9:00 p.m. | 12:00 a.m. | 3.0 hours | Remotely |
| 07/21/14 | 8:00 p.m. | 10:00 p.m. | 2.0 hours | Remotely |
| 07/22/14 | 8:00 p.m. | 10:00 p.m. | 2.0 hours | Remotely |
| 07/23/14 | 8:00 p.m. | 10:00 p.m. | 2.0 hours | Remotely |
| 07/24/14 | 8:00 p.m. | 10:00 p.m. | 2.0 hours | Remotely |
| . . . | | | | |

Id. at 6. (This is an excerpt, the table is over six pages long.)

| Date | Unauthorized PTO Used for regular pay owed…. | Unpaid PTO |
|---|---|---|
| 02/02/15 | 8.0 hours | 8.0 hours |
| 02/27/15 | 5.0 hours | 5.0 hours |
| 03/31/15 | 7.0 hours | 7.0 hours |
| 04/28/15 | 8.0 hours | 8.0 hours |
| 5/19/15 | 8.0 hours | 8.0 hours |
| 6/24/15 | 8.0 hours | 8.0 hours |
| 6/30/15 | 8.0 hours | 8.0 hours |
| 8/05/15 | 8.0 hours | 8.0 hours |
| 8/10/15 | 8.0 hours | 8.0 hours |

13

***Please be advised I reached out to Stacey Ellis, Amanda Kleet and Katie Dziedzik regarding my PTO accrued being utilized to pay for shift hours worked multiple times. Please not I only requested for PTO from 12/16/14 to 12/19/2014. In which, I was advised by Sandra Corey I had to report why I was using my PTO. Please see exhibit H.

Id. at 5.

The first two charts don't appear to reflect lost overtime pay but rather entire checks that the plaintiff alleges she did not receive. The third chart suggests that, in addition to working 8 a.m. to 4:07 p.m. on July 21, 2014, with .50 hours overtime, the plaintiff returned home to work remotely for an additional two hours. Id. at 7-14. The last chart purportedly tracks unauthorized "paid time off used for regular pay owed."

While the answers to interrogatory 5(a) that the plaintiff filed with the court are confusing, it appears that the responses she filed with the court to interrogatories 5(b) and 5(c) are complete. According to the plaintiff, Stacey Ellis, Amanda Kleet, Gabriella Borda-Rossel and Katie Dzieddzic are responsible for denying her overtime between June 16, 2014 to August 21, 2015. Dkt. No. 114 at 14. She states that Kimberly Turk and Michelle Day were contacted regarding unpaid wages and overtime. Id. at 14. And, she asserts that Bora-Rossel advised her she could work from home and would be compensated and that Ellis knew the plaintiff worked overtime. With respect to interrogatory 5(c), the plaintiff provided a list of seven people who would have information regarding her claim. Id. at 15.

The plaintiff attached to the responses she filed with the court twenty-three pages of exhibits, which the court briefly will summarize below:

14

- Exhibits A and B: email exchanges between Ellis and the plaintiff regarding punch corrections/missed punches. Dkt. No. 114-1 at 1-3.

- Exhibit C: another exchange between the plaintiff and Ellis in which the plaintiff says the "last two to four pay check have been late (more than a week at a time)" and that the last check was "tempered with" so the plaintiff contacted the post office for an investigation. Id. at 6.

- Exhibit D: email from the plaintiff to Kimberly Turk dated November 17, 2015, the plaintiff sent an email to Kimberly Turk regarding "unpaid wages for the last pay period in May of 2015." Id. at 8.

- Exhibit E: email from "DOR unclaimed property" to the plaintiff stating that funds were issued on March 2, 2018 and that $1,087.67 was reported to the Wisconsin Department of Revenue on October 26, 2017 from Res-Care Inc. as "Wages, Payroll, Salary." Id. at 10.

- Exhibit F: emails between Ellis and the plaintiff in which Ellis states that no one can stay past their scheduled hours unless approved, and there will be no overtime "ever." Id. at 12, 13. The plaintiff asserts she worked overtime without compensation. Id. at 13.

- Exhibit G: Email between Nicole Just and the plaintiff updating the plaintiff's list of clients who had started jobs. Id. at 15.

- Exhibit H: PTO balance sheet showing that as of 12/13/14 the plaintiff had 51.07 hours. Id. at 17. The plaintiff included a fax cover sheet attaching "patient discharge summary and work/school release form." Id. at 18-21.

- Exhibit I: letter from the State of Wisconsin Department of Workforce Development, stating that the plaintiff was owed 160 hours of unpaid wages at $19.24/hour, for a total of $3,078.40, and 51.07 hours of unpaid PTO at $19.24/hour, for a total of $982.57; because Res-Care had not responded to notices of the plaintiff's complaint, the department assumed that it did not dispute the complaint. Id. at 23.

15

On August 12, 2022, the plaintiff filed "Interrogatories and Supplemental Responses." Dkt. No. 115. There are inconsistencies between the charts in dkt. nos. 114 and 115, and within the charts in dkt. no. 115. For example, Dkt. No. 114 (p. 2) includes an entry for August 1, 2014 reflecting an "Out" time of 3:31 p.m.; Dkt. No. 115 (p. 1) reflects an "Out" time of 4:31 p.m. Dkt. No. 115 includes a new chart reflecting dates for unpaid hours that did not appear on Dkt. No. 114 (August 11-20, 2015; May 18, 2015; May 20-21, 2015; May 25-28, 2015; July 13-20, 2015; July 22-24, 2015). Dkt. No. 115 at 5.

There are also inconsistencies within the document received on August 12. The interrogatories and supplemented responses filed on August 12, 2022 include a sixth column in the first chart, which is not labeled. Dkt. No. 115 at 1-4. For example, the chart indicates that on July 21, 2014, the plaintiff was "In" at 8:00 a.m. and "Out" at 4:07 p.m.; the fourth, un-labeled column reads "4:07 p.m. – 4:32 p.m.," and the fifth, "Unpaid Hours" column reads, ".50 hours." Id. at 1. If the plaintiff started work at 8:00 a.m. and ended at 4:07 p.m., she worked eight hours and seven minutes. If she started work at 8:00 a.m. and stopped at 4:32 p.m., then she worked thirty-two minutes of overtime. The chart indicates that on July 25, 2014, the plaintiff was "In" at 8:02 a.m. and "Out" at 3:49 p.m.; the fourth, un-labeled column reads "3:49 p.m. – 5:17 p.m." and the fifth, "Unpaid Hours" column reads ".75 hours." Id. If the plaintiff started work at 8:02 a.m. and finished at 3:49 p.m., she worked less than an eight-hour day. If she started work at 8:02 a.m. and did not finish until 5:17 p.m. (in person), she worked nine hours and fifteen minutes—1.25

16

hours of overtime, not the .75 the "Unpaid Hours" column reflects. Perhaps the plaintiff meant to deduct meal breaks and/or round to the nearest quarter hour, but she did not provide any explanation.

In another example, the plaintiff says that on October 3, 2014, she was "In" at 7:58 a.m. and "Out" at 6:10 p.m.—ten hours and twelve minutes—but the fourth, un-labeled column reads "10:52 a.m. – 11:22 p.m. & 11:22 a.m. – 6:10 p.m." Dkt. No. 115 at 1-2. Although it appears that the plaintiff may be claiming to have worked almost fifteen hours, the amount reflected in the "Unpaid Hours" column is 2.97. Id. at 1. The next two entries (October 7 and 8, 2014) report nine "Unpaid Hours" for each day, with the time "In" reflected as 8:00 a.m. and the time "Out" reflected as 5:30 p.m. Dkt. No. 115 at 2. If the plaintiff worked 8:00 a.m. to 5:30 p.m. those two days, she put in only thirty minutes of overtime each day, not nine hours.

Another, different chart indicates that on May 28, 2015, the plaintiff was "In" at 8:16 a.m. and "Out" at 5:01 p.m.—eight hours and forty-five minutes. Id. at 5. But the "Unpaid Hours" column reflects "8.0 hours." Id.

| Pay Date | Start & End Pay Period *** Withheld paychecks from ResCare | Date | In | Out | Unpaid Hours |
|---|---|---|---|---|---|
| 08/28/15 | 08/08/15 - 08/21/15 | 1. 08/10/15<br>2. 08/11/15<br>3. 08/12/15<br>4. 8/13/15<br>5. 08/14/15 | 1. 8:30 a.m.<br>2. 8:30 a.m.<br>3. 8:27 a.m.<br>4. 8:29 a.m.<br>5. 8:29 a.m. | 1. 5:00 p.m.<br>2. 5:00 p.m.<br>3. 5:08 p.m.<br>4. 5:32 p.m.<br>5. 5:02 p.m. | 1. 8.0 hrs.<br>2. 8.0 hrs.<br>3. 8.15 hrs.<br>4. 8.30 hrs.<br>5. 8.0 hrs. |

Case 2:19-cv-00378-PP   Filed 03/07/23   Page 17 of 26   Document 119

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | 6. 08/17/15 | 6. 8:28 a.m. | 6. 5:04 p.m. | 6. 8.0 hrs. |
|  |  | 7. 08/18/15 | 7. 8:30 a.m. | 7. 5:05 p.m. | 7. 8.0 hrs. |
|  |  | 8. 08/19/15 | 8. 8:29 a.m. | 8. 5:00 p.m. | 8. 8.0 hrs. |
|  |  | 9. 08/20/15 | 9. 8:29 a.m. | 9. 5:04 p.m. | 9. 8.0 hrs. |
|  |  | 10. 08/21/15 | 10. 8:28 a.m. | 10. 4:30 p.m. | 10. 7.30 hrs. |
| 06/5/15 | 05/16/15-05/29/25 | 1. 5/18/15 | 1. 8:27 a.m. | 1. 5:01 p.m. | 1. 8.0 hrs. |
|  |  | 2. 5/19/15 | 2. 8:00 a.m. | 2. 4:30 p.m. | 2. 8.0 hrs. |
|  |  | 3.5/20/15 | 3. 8:26 a.m. | 3. 5:01 p.m. | 3. 8.0 hrs. |
|  |  | 4. 5/21/15 | 4. 8:32 a.m. | 4. 5:06 p.m. | 4. 8.0 hrs. |
|  |  | 5. 5/22/15 | 5. 8:00 a.m. | 5. 5:30 p.m. | 5. 1.0 hrs. |
|  |  | 6. 5/25/15 | 6. Holiday | 6. Holiday | 6. 8.0 hrs. |
|  |  | 7. 5/26/15 | 7. 8:30 a.m. | 7. 5:00 p.m. | 7. 8.0 hrs. |
|  |  | 8. 5/27/15 | 8. 8:30 a.m. | 8. 5:00 p.m. | 8. 8.0 hrs. |
|  |  | 9. 5/28/15 | 9. 8:16 a.m. | 9. 5:01 p.m. | 9. 8.0 hrs. |
|  |  | 10. 5/29/15 | 10. 8.20 a.m. | 10. 6:20 p.m. | 10. 1.15 hrs. |
| 07/31/15 | 07/11/15-07/24/15 | 1. 7/13/15 | 1. 8:05 a.m. | 1. 5:02 p.m. | 1. 8.30 hrs. |
|  |  | 2. 7/14/15 | 2. 8:28 a.m. | 2. 4:35 p.m. | 2. 7.30 hrs. |
|  |  | 3. 7/15/15 | 3. 8:30 a.m. | 3. 5:07 p.m. | 3. 8.0 hrs. |
|  |  | 4. 7/16/15 | 4. 8:04 a.m. | 4. 5:04 p.m. | 4. 8.0 hrs. |
|  |  | 5. 7/17/15 | 5. 8:28 a.m. | 5. 5:11 p.m. | 5. 8. 15 hrs. |
|  |  | 6. 7/20/15 | 6. 8:25 a.m. | 6. 5:04 p.m. | 6. 8.0 hrs. |
|  |  | 7. 7/21/15 | 7. 8:28 a.m. | 7. 5:30 p.m. | 7. 8.0 hrs. |
|  |  | 8. 7/22/15 | 8. 8:29 a.m. | 8. 5:17 p.m. | 8. 8.15 hrs. |
|  |  | 9. 7/23/15 | 9. 8:28 a.m. | 9. 5:02 p.m. | 9. 8.0 hrs. |
|  |  | 10. 7/24/15 | 10. 8:30 a.m. | 10. 5:00 p.m. | 10. 8.0 hrs. |

- Please note I inquired about unpaid funds on several occasions for example: Early week of October 2015 and November 17, 2015. I contacted Human Resource and several other upper managements of ResCare. I was advised I had not wages to be disbursed. Please note that on 10/26/2017 ResCare Inc and Subsidiaries contact Wisconsin Department of Revenue to report $1,087.67 of claimed funds. The categories listed were Wages, Payroll, and Salary.
- Please note on 08/21/15 requested compensation per termination is excluded from the above chart. Also the unpaid hours are in hours and minutes.

Id. at 5. Yet the previous, six-column chart shows that the following day—May 29, 2015—the plaintiff was "In" at 8:20 a.m. and "Out" at 5:00 p.m.; the fourth, un-labeled column reads "5:00 p.m. – 6:20 p.m." and the "Unpaid Hours" column reads "1.25 hours. Id. at 3.

The court agrees with the defendants that it is difficult to make sense of the plaintiff's calculations.

In the letter the court received from the plaintiff on August 22, 2022, the plaintiff asked the court to review "all exhibits provided on August 11, 2022 and thereafter in support of my claims herein the amended supplemental discovery responses." Dkt. No. 117 at 2. She asked for additional time to cure deficient responses if necessary. Id. With that—her most recent filing—the plaintiff attached three new exhibits:

- Exhibit A: email exchange between the plaintiff and Emery Harlan asking for copies of the initial requests and responses, and attaching the supplemental responses. Harlan appears to have sent an email on August 10, 2022 stating "Well, looks like she complied, correct?" but then retracted that email. Dkt. No. 117-1 at 4-5. On August 11, 2022, Harlan notified the plaintiff that her response to interrogatory no. 5 remained deficient. Id. at 12.

- Exhibit B: the first six pages appear to be copies of dkt. no. 115 and the remainder of the pages appear to be dkt. no. 114. Id. at 20-45.

- Exhibit C: email exchange between the plaintiff and defendant Stacey Ellis dated May 28, 2015 in which plaintiff says she was having phone issues. The plaintiff attached the PCF for the month. Id. at 44-46.

The plaintiff responded to interrogatory no. 5 three years *after* the defendants served their Requests to Admit, Interrogatories and Requests for Production of Documents on the plaintiff. Dkt. No. 56 at 2. The plaintiff responded to interrogatory no. 5 nineteen months *after* Judge Duffin granted the defendants' motion to compel, dkt. no. 78, and seventeen months *after* he imposed sanctions, dkt. no. 85. The plaintiff continued to file exhibits after the

19

August 12, 2022 deadline set by this court. Dkt. Nos. 112, 117. The defendants have not expressed concern with her supplemental responses to all other discovery requests and she appears to have adequately responded to interrogatory nos. 5(b) and 5(c). But the plaintiff's responses to 5(a) do not enable the defendants to determine the dates on which she claims that she worked overtime but was not paid for it, or how much overtime she worked on each of those days. The plaintiff has—long after she was required to—provided the defendants with information, but it is not *useful* information. The defendants cannot use this information to determine when they failed the pay the plaintiff for overtime she worked, or how much overtime she worked for which she was not paid. That is the purpose of discovery—to allow parties to determine what happened. In the case of the defendants, the point of discovery is to allow them to see the dates and times the plaintiff claims that she worked unpaid overtime, and then to determine whether they have proof to the contrary.

Twice this court warned the plaintiff that if she did not serve the defendants with the required, detailed information in time for the defendants to receive that information by the deadlines the court set, the defendants could renew their motion to dismiss. Dkt. No. 108 at 41; 112 at 6. In its July 26, 2022 order, the court told the plaintiff that if the defendants did not receive "the full, complete discovery responses by August 12, 2022, the court will grant the renewed motion to dismiss." Dkt. No. 112 at 6. The plaintiff provided the defendants with the discovery by the August 12, 2022 deadline, but the

20

information she provided does not make sense, nor does it clearly answer the questions the defendants have been asking for years—on what days did you work overtime without pay, and how much unpaid overtime did you work each of those days?

B.   Rule 37(d)(1) Sanctions

Federal Rule of Civil Procedure 37(d)(1)(A)(ii) allows the court to impose sanctions if a party properly served with interrogatories under Rule 33 fails to serve its answers, objections or written response. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(d)(3). Sanctions for Rule 37 violations may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party;

Fed. R. Civ. P. 37(b)(2)(A); see also Fed. R. Civ. P. 37(d)(3). The rule further provides that

> [i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). Under either Rule 37(b) or the court's inherent authority, the court must find that the plaintiff "acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." Ramirez v. T&H

21

Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016); see Fuery v. City of Chi., 900 F.3d 450, 463 (7th Cir. 2018) ("A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991))).

The court finds that the plaintiff has engaged in a pattern of willful delay and avoidance, which satisfies the Rule 37 standard. Brown v. Columbia Sussex Corp., 664 F.3d 182, 191–92 (7th Cir. 2011) (affirming dismissal of plaintiffs' claims for repeatedly missing discovery deadlines). In his January 14, 2021 order, Judge Duffin found that the plaintiff's objections to interrogatory no. 5 were baseless, dkt. no. 78 at 6, and that her responses were not sufficient (addressing matters of compensation other than overtime), id. at 7. Judge Duffin gave the plaintiff several extensions to file the required responses but she did not comply. The plaintiff did not appear for this court's June 23, 2021 hearing and did not respond to calls from the court's staff. Dkt. No. 94 at 1-2. As of October 5, 2021—almost ten months after he issued it—the plaintiff had made no attempt to comply with Judge Duffin's order. Id. at 3.

In a hearing on June 29, 2022, the plaintiff claimed that someone told her (she didn't know who) that she could simply sign release forms and "everything would be good." Dkt. No. 107. She also claimed that someone on the court's staff told her to write the judge a letter, even though the court requires all litigants to file motions—not letters—and staff cannot give legal

advice. Dkt. No. 107 at 2. In that same hearing, defense counsel explained to the court that he had not heard from the plaintiff since March 2021 and that he had done all he could to move the case forward. Id. at 2. Defense counsel had provided the plaintiff with all daily time records to help her identify dates and times. Id. After hearing from the parties, the court explained to the plaintiff that dismissal of a case as a sanction for not complying with court orders or discovery was a serious matter and that after all the time that had passed the court still had no clarity on why the plaintiff had failed to comply with the orders. Id. at 2.

On July 6, 2022, the court told the plaintiff that she must serve the missing discovery on the defendants by the end of the day of July 20, 2022 and that there would be no further extensions. Dkt. No. 108. Yet the plaintiff asked for another extension, claiming that she hadn't received the order (which had been sent to the same address that she previously had provided to the court). Dkt. No. 112. The court granted the extension, but again warned that if the defendants did not receive "the full complete discovery responses by August 12, 2022," the court would grant the renewed motion to dismiss. Dkt. No. 112 at 6. Even with the repeated extensions, and even with the defendants providing the plaintiff with her time sheets, the plaintiff has (finally) responded to interrogatory no. 5 with documents and charts that do not clearly explain the overtime claim.

This places the court in a difficult position. It warned the plaintiff that if she did not provide the defendants with detailed information by the end of the

day on August 12, 2022, the court would dismiss the entire case. Faced with dismissal of her entire case, the plaintiff provided detailed information to the defendants by August 12, 2022. She also reached out to the defense more than once, seeking assurance that she had provided what she was required to provide. In that sense, she has done the bare minimum that the court ordered her to do—provide detailed information to the defendants by a date certain.

On the other hand, the information she has provided is of no use to the defendants in determining whether they did, in fact, fail to pay the plaintiff overtime, on what dates and for how much time. So the defendants are no more able today to defend against the plaintiff's claim that she was not paid for overtime than they were three years ago.

Because it appears that the plaintiff attempted to provide information responsive to interrogatory no. 5, the court is uncomfortable dismissing the entire case. It should not have taken the plaintiff as much time as it did to provide the information. It should not have taken the court having to explain to the plaintiff exactly what information she needed to provide. It should not have taken the defendants filing more than one motion to dismiss. But the plaintiff does appear to have tried to provide information that, in her mind, was responsive to interrogatory no. 5.

That said, the plaintiff's delays have dragged this litigation out for an unacceptable amount of time. The court is responsible for some of that delay— it gave the plaintiff opportunity after opportunity to comply with Judge Duffin's order and with this court's orders. It granted the plaintiff extensions even when

24

it said it would not do so. All the while, the defendants have been waiting to get information that would enable them to figure out the dates and times on which the plaintiff alleged that she worked unpaid overtime and how much unpaid overtime she claimed to have worked. Despite all the delays, the defendants still do not have this information. A sanction is warranted, even if it is not the most severe sanction of dismissal of the entire case.

When Judge Peterson screened the complaint years ago, he allowed the plaintiff to proceed on a Title VII hostile-work-environment and retaliation claim against Res-Care Inc., an Equal Pay Act claim against Res-Care and a Fair Labor Standards Act claim against defendants Res-Care, Katie Dziedzic, Steven Reinhold, Amanda Kleet, Stacey Ellis and Gary Rudzianis. Dkt. No. 5 at 5-6. The plaintiff's claims under the Fair Labor Standards Act were that the defendants "failed to pay her properly owed paid time off, bonuses, vacation, and overtime, and then fired her in part for filing a complaint about being denied various parts of her compensation." Id. at 5. Judge Peterson noted that the Fair Labor Standards Act does not cover deprivations of promised paid vacation, time off or bonuses, so he concluded that the plaintiff was asserting a claim that she had been deprived of overtime pay, and that she had been fired in part in retaliation for complaining about being deprived of overtime pay. Id. Because interrogatory no. 5(a) requested discovery regarding the FLSA claim (specifically the unpaid overtime claim), the court will dismiss that claim with prejudice. The defendants may file a motion for the reasonable expenses they incurred because of the plaintiff's delay.

25

### III.    Conclusion

The court **GRANTS IN PART** the defendants' renewed motion to dismiss.
Dkt. No. 109.

The court **DISMISSES** the plaintiff's claim under the Fair Labor
Standards Act that she was not paid for overtime worked and that she was
terminated, in part, for complaining about not being paid for overtime.

If the defendants choose to file a motion for costs under Federal Rule of
Civil Procedure 37(a)(5), they must do so within fourteen days of the date of
this order. If the plaintiff wishes to oppose the defendants' motion for costs, she
must file a brief explaining why she opposes it in time for the court to receive it
within ten days after the defendants file the motion.

The court **ORDERS** that by the end of the day on **March 24, 2023**, the
defendants must file a status report advising the court whether they believe
any further discovery is necessary, whether they wish the court to set a
deadline for filing dispositive motions and how far out they wish the court to
set that deadline.

Dated in Milwaukee, Wisconsin this 7th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

26